402 A.2d 1167.

ETIENNE R. SOUCY *vs.* ARMAND MARTIN *et al.*

JUNE 13, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   This is an appeal in a civil action brought by Etienne R. Soucy (Soucy) against Armand Martin (defendant)[1] for personal injuries. Following the entry of an adverse jury verdict finding him 75% negligent, the defendant filed a motion for a new trial. The trial justice denied that motion.

Soucy, the owner of Steve Soucy Construction Company, Inc., agreed to move steel for defendant on Soucy's flatbed tractor-trailer truck. At defendant's warehouse, Soucy positioned his truck under a movable crane attached to the roof of the warehouse and, aided by defendant, proceeded to load the I-beams onto the back of his truck. The defendant, who operated the crane, had complete control over the eventual placement of the beams. He positioned the first beam over

---

[1]The actual defendants in this action are Armand Martin and M. & M. Welding & Fabricating Company, Inc. For the purpose of simplification, however, we shall refer to Martin as the defendant.

the truck while Soucy steadied it with his hand. The defendant then lowered it onto the truck. Although the beam was 50-feet long and weighed 2,000 pounds, it landed on the truck in a top-heavy position, balanced on its narrower 6-inch flange, with its 18-inch flange up in the air. The greater part of the beam did not come into contact with the trailer. As Soucy stepped toward the rear of the truck, the beam toppled onto his leg, seriously injuring him.

Soucy tried his consequent personal injury action before a jury. After presentation of the evidence, the trial justice instructed the jury under the comparative negligence statute, G.L. 1956 (1969 Reenactment) §9-20-4. The trial justice also instructed the jury in the area of assumption of the risk:

> "Under the law of Rhode Island, a plaintiff is not entitled to recover damages for his injuries, even though the injuries were caused by the defendants' negligence, if the plaintiff knowingly and voluntarily assumed the risk of receiving such injuries.

> "If you find that . . . Mr. Soucy voluntarily and knowingly worked and continued to work under conditions likely to cause injury to him, and, if you also find that . . . Mr. Soucy did, in fact, receive injuries to his person as a consequence of working and continuing to work under such conditions then, as a matter of law, he assumed the risk of those injuries and your verdict must be in favor of the defendants.

> "The plaintiff, . . . Mr. Soucy . . . at the time and place of the incident in question, had an obligation to use reasonable care for his own safety. This includes an obligation to look and take into consideration the conditions and circumstances which would be obvious to a reasonable person in the same or similar circumstances and to govern himself accordingly.

> "If you find that there were risks and hazards incidental to the loading of the beam which injured the plaintiff and if you further find that the risks and hazards were as obvious and apparent to the plaintiff as they were to the defendant, then you are instructed that

the plaintiff assumed the risks and hazards in question, and if the plaintiff's injuries arose out of such risks and hazards your verdict must be for the defendants."

The jury found Soucy 25% negligent and defendant 75% negligent and awarded Soucy $80,000 in total damages.

The defendant argues that the trial justice misconceived both the law and the evidence in denying his motion for a new trial. Specifically, defendant claims that the trial justice should have allowed the motion because the jury had found that Soucy was 25% negligent, and that finding thus constrained it also to find that Soucy had assumed the risk of injury, so that he would be barred from recovery. Additionally, defendant asserts that in view of evidence establishing the existence of an obvious risk of harm, the jury would have found that Soucy had assumed that risk had it followed the instructions of the trial justice.

In view of defendant's allegations, it is necessary to distinguish between the doctrines of assumption of the risk and contributory negligence. The doctrine of assumption of the risk is governed by a subjective standard, while the doctrine of contributory negligence is an objective determination. One of our recent opinions contains the following instructive discussion:

> " 'in deciding whether a plaintiff knew of and understood the extent of the risk he incurred, the standard is subjective and is keyed to "what the particular plaintiff in fact sees, knows, understands and appreciates.' " [citation omitted.] This subjective standard is to be applied to asumption of the risk cases and is to be distinguished from an objective standard 'which is concerned with how in the particular case the hypothetical reasonable man of ordinary prudence *would* have acted.' "

*Kennedy* v. *Providence Hockey Club, Inc.*, 119 R.I. 70, 75, 376 A.2d 329 332 (1977), *quoting in part D'Andrea* v. *Sears, Roebuck & Co.*, 109 R.I. 479, 487, 287 A.2d 629, 633 (1972).

In *Barbato* v. *Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964), this court clearly defined the duty of a trial justice when deciding a motion for a new trial. The trial justice

considers, in the exercise of his independent judgment, all of the material evidence in light of his charge to the jury. He then passes on the weight of the evidence and on the credibility of the witnesses.

In deciding defendant's motion for a new trial, the trial justice did not misconceive the law or the evidence. His decision demonstrates that he conformed to the *Barbato* standard of review by independently weighing all of the evidence in view of his jury instructions, which adequately delineated the distinction between negligence and assumption of the risk. Only after passing on the weight of the evidence and on the credibility of the witnesses did the trial justice find that the verdict conformed to the merits of the controversy and was based upon both the facts and the law.

The trial justice grounded this determination upon the testimony of both Soucy and defendant. Soucy had testified that he had never loaded or carried steel beams and that he knew nothing about them. The defendant testified that the initial placing of the beam was dangerous. This testimony led the trial justice to conclude that Soucy neither appreciated nor voluntarily assumed the risk involved in moving the beams.

The trial justice also correctly ascertained that this conclusion was not mutually exclusive of the finding that Soucy had failed to exercise reasonable care to the extent of 25% for his own safety by assisting defendant in moving the beam. Any other interpretation would have condoned a merger of the doctrines of contributory negligence and assumption of the risk, which we specifically rejected in *Kennedy* v. *Providence Hockey Club, Inc.*, 119 R.I. at 76, 376 A.2d at 332.

The defendant's second assertion appears to be that the jury should have viewed the evidence as tending to prove that the risk of harm was obvious. The law clearly establishes, however, that inferences drawn from contradictory evidence are properly within the domain of the trier of facts. *Providence & Worcester Co.* v. *Exxon Corp.*, 116 R.I. 470, 486, 359 A.2d 329, 338 (1976); *Smith* v. *DeFusco*, 107 R.I. 392, 395, 267 A.2d 725, 727 (1970); *Marstan Corp.* v. *Centreville*

*Realty Co.,* 106 R.I. 36, 38, 256 A.2d 26, 27 (1969). Although the issues of assumption of the risk and contributory negligence are generally issues for the trier of facts, where the facts suggest only one reasonable inference, the issue may be decided as a matter of law by the trial justice. *See Kennedy* v. *Providence Hockey Club, Inc.,* 119 R.I. at 77, 376 A.2d at 333. In this situation, however, the record indicates that more than one reasonable inference could be drawn from these facts. When the evidence will sustain at least two conflicting inferences, both of which are reasonable,the inference drawn by the trier of facts will stand. *Smith v. DeFusco,* 107 R.I. at 395, 267 A.2d at 727; *Williams* v. *Rhode Island Hospital Trust Co.,* 88 R.I. 23, 38, 143 A.2d 324, 332 (1958). In this case, not only did the jury refrain from finding that the risk of harm was obvious, but also the trial justice, after independently weighing the evidence and determining the credibility of the witnesses, denied defendant's motion for a new trial, thereby endorsing the verdict of the jury. Because the trial justice complied with the rule set out in *Barbato,* we hold that he did not err in denying defendant's motion for a new trial.

## II

The defendant next assigns as error the refusal of the trial justice to allow evidence of Soucy's earnings during the period of his alleged incapacity. The defendant argues that the trial justuce abused his discretion in making this ruling and that this prejudicial error entitles him to a new trial.

In reaching his decision on this issue, the trial justice was confronted with the question of whether the evidence could be introduced without violating the collateral source rule. This rule provides that, absent a statutory provision to the contrary, the amount of recovery from one responsible for another person's injury will not be reduced by the amount received from a collateral source by the plaintiff as gratuity, wages or salary during the period of his injury. *Oddo* v. *Cardi,* 100 R.I. 578, 584, 218 A.2d 373, 376-77 (1966); *Coia* v. *Eastern Concrete Products Co.,* 85 R.I. 128, 133, 127 A.2d 858, 861 (1956); *Perry* v. *New England Transportation Co.,* 71 R.I. 352, 359, 45 A.2d 481, 485 (1946); *Audette* v. *New*

*England Transportation Co.*, 71 R.I. 420, 429, 46 A.2d 570, 574 (1946). The collateral source rule, however, does not operate as a complete bar to the admission of this evidence in every situation. In *Bookbinder* v. *Rotondo*, 109 R.I. 346, 285 A.2d 387 (1972), we stated that "the collateral source rule should [not] be an absolute prohibition to the introduction of evidence that a plaintiff was paid by his employer during the period of alleged disability when such evidence is offered to show that plaintiff was not disabled or was in fact working or to affect the weight of his testimony that his injury caused his absence from work." *Id.* at 357, 285 A.2d at 393.

In ruling on this matter, therefore, the trial justice had to determine whether the evidence of Soucy's earnings during his alleged incapacity was offered by the defendant pursuant to any of the permissible circumstances found in *Bookbinder.* In general the question whether evidence is relevant or material rests in the discretion of the trial justice and will not be held to be reversible error unless his ruling constitutes a prejudicial abuse of discretion. *Id.* at 357, 285 A.2d at 393. The record indicates that the trial justice considered the fact that Soucy had performed some of his employment functions along with the seriousness of his injuries, which had necessitated three operations, and concluded that Soucy's earning capacity had been diminished. In leaving to the jury the determination of the extent that Soucy had suffered a loss of earning capacity, the trial justice decided that evidence concerning Soucy's receipt of a salary during his convalescence was not admissible under the *Bookbinder* ruling. We hold that the trial justice did not abuse his discretion in ruling that the collateral source rule excluded the disputed evidence in this situation.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*James M. Shannahan, Paul A. Lietar,* for plaintiff.

*Hanson, Curran & Parks, A. Lauriston Parks, Robert D. Parrillo,* for defendants.