Elizabeth Morel            :

v.                         :

Stephen Napolitano, Alias in His Capacity as   :
    Treasurer for the City of Providence.

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Elizabeth Morel               :

v.               :

Stephen Napolitano, Alias in His Capacity as  :
    Treasurer for the City of Providence.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The plaintiff, Elizabeth Morel, filed a civil action against the City of Providence (city)[1] for personal injuries she suffered after a school bus that she was operating fell into a sinkhole on a city roadway. A jury trial was held in the Superior Court, which resulted in a verdict finding that the defendant was negligent and awarding the plaintiff $59,239 in damages. On appeal, the city argues that the trial justice erred "in admitting affidavits that failed to conform to the express requirement of [G.L. 1956 § 9-19-27] that they must be sworn to under penalty of perjury." The city additionally argues that the trial justice clearly abused her discretion by preventing it "from pursuing its well disclosed and announced intention to cross-examine the [p]laintiff during trial as to her receipt of workers['] compensation" benefits. This case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further

---

[1] The original complaint filed in Superior Court lists only the city as a defendant; however, the amended complaint adds Stephen Napolitano, in his capacity as the city's treasurer, as a defendant.

briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Procedural History

On April 5, 2006, Morel was operating a school bus on Fairview Street in the city of Providence when the front wheels of the bus fell into a trench. Evidence was presented at trial that employees of the Providence Water Supply Board (Providence Water), a public utility and agency of the city, had installed a temporary patch in the road after completing a "remove and install service" on the pipes that ran underneath the area; however, the trench had "washed out" due to a heavy rainfall, causing the patch to fail.

Morel filed a complaint against the city on October 20, 2006. In an amended complaint filed on December 1, 2006, Morel alleged that the city, through Providence Water, had been negligent, careless, and reckless when it excavated the roadway. A jury trial was held on March 1-4, 2010, and a verdict was returned for Morel. A judgment was entered on March 4, 2010, awarding Morel $59,239. Subsequently, the trial justice awarded Morel costs in the amount of $5,738.45. The city filed a timely notice of appeal.

## II

## Standard of Review

This Court reviews questions of statutory construction and interpretation de novo. Mendes v. Factor, 41 A.3d 994, 1002 (R.I. 2012). When the statutory language is clear and unambiguous, we give the words their plain and ordinary meaning. Id. Therefore, "when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." Mutual Development Corp. v. Ward Fisher & Co., LLP, 47 A.3d 319, 328

(R.I. 2012) (quoting <u>In re Harrison</u>, 992 A.2d 990, 994 (R.I. 2010)).  Further, "[i]t is well established that the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice[']s decision unless a clear abuse of that discretion is apparent." <u>Notarantonio v. Notarantonio</u>, 941 A.2d 138, 149 (R.I. 2008) (quoting <u>DiPetrillo v. Dow Chemical Co.</u>, 729 A.2d 677, 690 (R.I. 1999)).

## III

### Discussion

### A

### The Affidavits

On appeal, the city argues that, during the trial, Morel was permitted to introduce medical records that were not properly authenticated in accordance with the required procedure set forth in § 9-19-27.[2]  Specifically, the city takes issue with the fact that the affidavits lack the exact recitation of the statutory language, "subscribed to and sworn under the penalties of perjury."

---

[2] General Laws 1956 § 9-19-27 provides, in pertinent part:
> "(a) This section is enacted primarily to relieve physicians and the other medical professionals defined herein who are associated with hospitals and other health care facilities from the hardship and inconvenience of attending court as witnesses, therefore in interpreting this section and the medical records exception to the hearsay rules of evidence in court or other related proceedings, the trial courts of this state shall liberally construe this section to admit what is presumptively reliable medical evidence presented by way of this statutory process without the necessity of calling numerous medical personnel as witnesses.
> "(b) In any proceeding commenced in any court, commission, or agency, an itemized bill and reports * * * relating to medical, dental, hospital services * * * subscribed and sworn to under the penalties of perjury by the physician, dentist, or authorized agent of the hospital or health care facility * * * shall be admissible as evidence of the fair and reasonable charge for the services and/or the necessity of the services or treatment, the

- 3 -

Morel counters that "[t]he fact that the words 'under the penalties of perjury' were not used in no way make[] the affidavit[s] void" because "[t]here is no question that each of the affidavits w[as] signed and sworn to before a valid notary," as each expressly states: "[Now comes] the undersigned, being duly sworn, on oath, deposes and states as follows * * *," and each includes the notary's statement that the affidavit was "[s]ubscribed and sworn before" the notary by the affiant. Further, Morel contends that the words "under the penalties of perjury" are not used in depositions, when a person is sworn in during court proceedings, or within answers to interrogatories, nor are they required within an affidavit supporting a search warrant or by the perjury statute, G.L. 1956 § 11-33-1. Lastly, she points out that "[§] 9-19-27 expressly allows for the calling of any of the affiants by an opposing party" so that they may be questioned "as to whether the information contained in the affidavits was accurate," but she notes that the city did not do so.

This Court has stated that "[s]ection 9-19-27 provides a mechanism for admission of opinion evidence through documentation, without the need for expert testimony." Boscia v. Sharples, 860 A.2d 674, 679 (R.I. 2004). Although the statutory language clearly requires that the documentary evidence be "subscribed and sworn to under the penalties of perjury," it does not expressly require that this exact phrase be used. The General Assembly, in at least two other instances, has mandated by statute that certain documents include the phrase "under penalties of perjury." See G.L. 1956 § 23-19-13.1(c) ("The certification * * * shall be under oath, stating that the oath is made under the pains and penalties of perjury."); G.L. 1956 § 44-40-5 ("The [tax] return shall contain, or be verified by, a written declaration that it is made under penalties of perjury."). Such is not the case here. The language used in § 9-19-27(b), "subscribed and sworn

diagnosis of the physician or dentist, [or] the prognosis of the physician or dentist * * *."

- 4 -

to under the penalties of perjury," creates the requirement that the documents be sworn to under oath. Black's Law Dictionary defines the word "swear" as "[t]o take an oath," and the word "oath" as "[a] solemn declaration * * * that one's statement is true," the legal effect of which is to "subject the person to penalties for perjury if the testimony is false." Black's Law Dictionary 1585, 1176 (9th ed. 2009). The word "perjury" is defined as "[t]he act or an instance of a person's deliberately making material false or misleading statements while under oath." Id. at 1254.

This Court has previously stated that "[o]ur legal system treats with great seriousness a statement that has been sworn to before a notary public. Statements sworn to in affidavits can have immensely serious consequences." Scarborough v. Wright, 871 A.2d 937, 939 n.4 (R.I. 2005); see also In re Testa, 489 A.2d 331, 335 (R.I. 1985) ("Because the affidavit was sworn to before a notary public, the statements asserted therein were regarded as truthful and the document is therefore available as evidence of the facts stated."). The potential consequence of knowingly swearing to an untruthful statement made within an affidavit is a conviction for perjury. Section 11-33-1(a) ("Every person under oath or affirmation who knowingly makes any false material declaration or makes or uses any other information * * * knowing it contains any false material declaration, shall be deemed guilty of perjury."). Therefore, any statement, whether oral or written, when given under oath, is sworn to under the penalties of perjury.

The city attempts to support its argument by citing to Scarborough, 871 A.2d at 939 (holding that the defendant's affidavit did not sufficiently satisfy the requirements of Rule 56 of the Superior Court Rules of Civil Procedure because of the "plaintiff's failure to have abided by

the clear and specific language of Rule 56"),[3] and <u>Chrysler First Financial Services Corp. v. Van Daam</u>, 604 A.2d 339, 341 n.1 (R.I. 1992) (noting that the unsigned statement presented by the defendant did not meet the requirements of an affidavit because it was "devoid of an acknowledgment that the assertions made within [were] sworn to before a notary"). The city's reliance upon these cases is misplaced, however.

In <u>Scarborough</u>, 871 A.2d at 938, the plaintiff presented an affidavit that was not notarized and, therefore, we deemed it not to constitute a sufficient affidavit for purposes of Rule 56. This Court defined an affidavit to be "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." <u>Id.</u> at 939 (quoting <u>State v. Haase</u>, 530 N.W.2d 617, 618 (Neb. 1995)). In <u>Van Daam</u>, 604 A.2d at 341 n.1, we said that an <u>unsworn</u> statement was not sufficient to meet the requirements of an affidavit because the document "merely contain[ed] the acknowledgment of a notary that [the defendant's] signature [was] his free act and deed" and was "devoid of an acknowledgment that the assertions made within are sworn to before a notary." Here, the affidavits that Morel presented were clearly signed in the presence of a notary by each affiant and each expressly states that the truth of the factual statements within each affidavit was sworn to under oath. Because the affidavits were subscribed and sworn to under oath in the presence of a notary, we are of the opinion that the

---

[3] Rule 56(e) of the Superior Court Rules of Civil Procedure, states, in pertinent part, that an affidavit

> "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

legislative requirements contained in § 9-19-27 have been met, and that the trial justice did not err in admitting the affidavits into evidence at the trial.[4]

## B

## Workers' Compensation Benefits

On appeal, the city also contends that the trial justice clearly abused her discretion by preventing it "from pursuing its well disclosed and announced intention to cross-examine the [p]laintiff during trial as to her receipt of workers['] compensation." Before the commencement of trial, by way of a motion in limine, the city sought to introduce evidence that Morel, ignoring medical advice that she was able to return to work, instead chose to remain out of work until the start of the following school year, all the while receiving workers' compensation benefits. The city maintained that, "[t]o a layman, that raises a suspicion that the plaintiff was interested in remaining out of work for the summer, and the fact she received Worker's [sic] Compensation benefits during that time made it more tenable for her to do so." After offering Soucy v. Martin, 121 R.I. 651, 402 A.2d 1167 (1979), and Bookbinder v. Rotondo, 109 R.I. 346, 285 A.2d 387 (1972), to support its contention that "the [c]ourt is not bound by the Collateral Source Rule to prohibit any mention of [the benefits]," the city requested that the court "take a wait-and-see approach" to determine whether the collateral-source rule prohibited testimony concerning Morel's receipt of workers' compensation benefits. The plaintiff contended that evidence of the benefits was clearly inadmissible under Rule 409 of the Rhode Island Rules of Evidence.[5] The

---

[4] Although defendant suggests in its supplemental Rule 12A statement that it "should have had the opportunity to cross[-]examine the 'affiant' regarding the assertions made in the statements," we need not address this argument since we have determined that the affidavits conformed to the requirements of § 9-19-27.

[5] Rule 409 of the Rhode Island Rules of Evidence states that "[e]vidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury."

trial justice stated that she did not find the above-cited cases to be "on point" and that she was "not going to allow it at [that] point in time." She also told the city that, "during trial, if anything comes up that would change that, you certainly can renew your motion at that time," but she thought there were "ample grounds for cross-examination as to [plaintiff's] motives" and the reasons for her return to work that the city could argue to the jury.

During the trial, while on direct examination, Morel testified that she had tried to go back to work, but that her doctor told her she could not. Morel was asked when that occurred and replied: "I wanted to go back to work because I was paying all my bills with my credit card." Subsequently, on cross-examination, Morel was asked, "I believe you had said that while you were out of work you had to pay all your bills with a credit card?" to which Morel responded, "Yes." A sidebar conference took place, at which the city argued that the statement Morel made during direct examination opened the door to the introduction of the fact that she was receiving workers' compensation benefits while she was not working. The trial justice determined that Morel's comment had not been responsive to the question posed to her and that the city could have moved to strike the comment, but did not do so.

On appeal, the city argues that evidence of plaintiff's receipt of workers' compensation benefits "was not to be offered nakedly for prejudicial value[;] rather, it was to be part of a presentation that included other facts of a prolonged recovery and late diagnosis of a head injury that tended to insulate [p]laintiff from the evidence of her slow recovery." The city, quoting Capezza v. Hertz Equipment Rental Corp., 118 R.I. 1, 6, 371 A.2d 269, 272 (1977), contends that the trial justice's decision was erroneous because the evidence should have been allowed "in order to affect the weight of plaintiff's testimony as [she] attempted to establish causation

between the alleged injuries and the accident * * *." Morel counters that the evidence of workers' compensation benefits was properly excluded as classic collateral source material.

In Bookbinder, 109 R.I. at 357, 285 A.2d at 393, this Court held that the collateral-source rule was not an absolute bar to the introduction of evidence that the plaintiff was paid by an employer during a period of disability when the evidence was offered to show that the plaintiff was not disabled or was, in fact, working. In the case under review, the record indicates that the trial justice ruled that the evidence concerning Morel's receipt of workers' compensation benefits during her time out of work was inadmissible because it was not offered to disprove her disability or to establish that she was in fact working. The trial justice also noted that the defendant was permitted to question Morel about whether she normally worked during the summer and that the defendant was entitled to reasonable inferences. Furthermore, the trial justice ruled that the basis proffered by the city for the admission of the evidence (i.e., that the plaintiff had an incentive to not return to work) was not sufficient under Bookbinder. We agree and perceive no abuse of discretion in the trial justice's ruling that the collateral-source rule excluded the evidence of Morel's receipt of workers' compensation benefits.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Elizabeth Morel v. Stephen Napolitano, Alias in His Capacity as Treasurer for the City of Providence.

**CASE NO:**      No. 2011-312-Appeal.
(PC 06-5510)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  May 6, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**  Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Susan E. McGuirl

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Robert A. D'Amico, II, Esq.

For Defendant:  Rebecca M. McCormick, Esq.